Hearing, hearing the Public Court of the 2nd District is now open. The Honorable Michael J. Burdick presides. Please be seated. Table number 2-12-1235 in re Harold W. Miner. Arguing for the respondent Mr. Brendan Kaler, argues for the people Mr. David Bernhardt. Thank you. Mr. Kaler you are to proceed. Good morning Honorable Justices, Mr. Bernhardt, Court staff, and to those in the gallery today. My name is Brendan Kaler. I represent the appellant Harold W. There is one issue raised on appeal. The Circuit Court of Winnebago County erred by denying Harold's petition for removal from the Illinois Juvenile Sex Offender Registry by incorrectly interpreting section 150-3-5D of the Unified Code of Corrections, here and after referred to as 3-5D. The trial court again erred by denying Harold's motion to reconsider, wherein the issues on appeal before this court were previously addressed. What was the difference between his original ruling and rationale and the ruling and rationale after the motion to reconsider was heard? Is there any difference? No Judge. So he kept speaking in English in that comment? Yes. This case is somewhat unusual because it's the first case, and I've been a lawyer since 1969, where an expert doesn't seem to have an opinion that covers the language of the law and facts that he's opining on. The expert witness, I believe, said that there was no risk opinion or mailbox designation, that the lowest designation or the least, the most secure as far as society is concerned, was low risk. Is that correct? That is correct. Was there any contentious argument, one way or the other, about how absurd this is? There did not appear to be, Your Honor. What the trial court was listening to from Mr. Sundberg, who was the expert witness who testified on behalf of the petitioner, was that based on his training and experience, obviously, that he did not have available to him as a certified clinician, pursuant to the Sex Offender Management Board registration and certification that he possessed, that permitted a designation of no risk. And I'd be prepared to speak a little bit more on that if you would be interested. Couldn't he have rendered an opinion based upon a reasonable degree of psychological certainty, whether it was more probable than not, whether your client posed a risk to the community? I think, and at the risk of getting a little esoteric, I think the standard of proof here is one that is very difficult. When the legislature enacted 3-5D, it said that by a preponderance of the evidence, that the petitioner needed to be found to be no risk to the community. It is not clear, and because this appears to be an issue that has not been handled yet, whether somebody is found to be no risk by a preponderance of the evidence or found to be no risk by some other standard, whether it's beyond a reasonable doubt or by clear and convincing evidence, the fact of the matter is if we require, if the legislature seems to have required that the petitioner be no risk, whether we have 0 times 51 percent or 0 times 95 percent, we're still at the end of the day requiring. You keep focusing on this no risk. What if you just plugged in the words, whether he poses a risk? Does he pose a risk, is it more probable than not, as to whether or not he poses a risk to the community? Theoretically, he could say, based upon my evaluation of the respondent minor and the standard of proof, it's more probable than not that he does not pose a risk to the community. How hard would that have been for him to say that? When he provided the evaluation that he did after, well, right shortly before the petition was filed, there were two evaluations. As part of the sex offender evaluation, Mr. Sundberg was asked to provide a risk classification, and pursuant to his credentials as a member of the Sex Offender Management Board, that is what he is trained to do in his evaluation. So to say that he is low risk, yes, low, absolutely, in an attempt to address Your Honor's question, low could mean 0.001 percent risk. But again, we have to deal, we're stuck with the statute as it's written, that it says no risk. Counsel, let me ask you a point. It is not your contention, is it, that the legislature, when they enacted the statute, using the words no risk meant no risk whatsoever? Is it your position that there's a problem with the legislation itself? Yes. Okay. Well, you're well familiar with that body of law that says we presume the legislature did not intend to enact a statute that would bring about unjust and absurd results. Why would they enact a statute that can never be met with evidence from the real world? Wouldn't that be the equivalent of an absurd result? Yes, because the legislature is not composed of individuals and clinicians who are licensed by the Sex Offender Management Board with background training and experience in dealing with... So are you attacking the statute itself? Are you saying it's unconstitutional? I mean, what is your position about the statute itself? Or are you saying the trial judge here erred in his interpretation of the statute? My argument would be both. My argument, most specifically before the court, however, though, is that this trial judge incorrectly interpreted the statute. A correct interpretation of the statute where it says somebody must be found to be no risk cannot produce anything other than an absurd or unjust result under the facts as presented to the trial court here. We have a minor in this case who was so successful in his course of treatment that at the end of his treatment, he was going between three to four months between counseling sessions. We had a minor who was working. We had testimony and evidence of good character. And under Section D and Section E, setting forth the factors to be considered, essentially what we have is a minor who at one point made a bad decision and when confronted with a bad decision to take computer equipment, was honest. Well, I mean, that record presents a very compelling reason that the minor in question did a great deal to turn his life around. I think it paints a favorable picture, but we're still going back and forth on the legal standard, which is a key here. As was alluded to earlier, why wouldn't the statute be interpreted no risk, meaning a risk? There's not a risk as opposed to no risk whatsoever. So I think you're a little off in your interpretation of the statute because it would be absurd on its face. Did the trial judge here say that he interpreted the words no risk to mean no risk whatsoever? Did he ever say how he interpreted the standard? I didn't see that here. No, that was not presented in the record. Didn't he basically say that the theft of the computer and the mouse kind of indicated that he still had social problems? He alluded to that yesterday. Not just the theft, but the fact that it was committed because he was angry at the teacher. He was lashing out at the teacher. I mean, I thought that's what the evidence was and that's what the trial court alluded to. Yes. And didn't the trial court say he considered all of the evidence but found the respondent presented too significant a risk? So that would indicate that he's not going with the standard of no possible risk, right? That is what interpretation, yes. Counsel, have you ever taken any science courses? Yes, sir. For three years I was a chemistry major, physics and math, and then I went into economics. And the first sciences are real sciences. They're based upon observation, based upon consistent observation. Economics, social sciences aren't really science. They're conventions. And this expert was a social scientist. And so when you talk about what his opinion is, his opinion is not something that can be carved in stone. It is based upon trends, but it's not based upon the fact that if it weren't for Brownian motion, we theoretically, or I shouldn't say theoretically, statistically, we would all suffocate. Because sooner or later, all the oxygen in the room would gravitate over to that corner. But it doesn't happen that way. It's never happened that way. So when you talk about how this is absurd, to me, your argument falls apart if, in fact, we realize that what this expert testifies to isn't as finite, isn't as certain as you make it out to be. You say it's absurd. My point is, it might be absurd to say that all the oxygen is going to go into that corner and we're all going to die, because it's beyond our experience. It's beyond any historical fact that I'm aware of. But I think it's safe to say that we all have met a psychologist or a psychiatrist who was wrong about an opinion, an observational one. So when the trial court makes rulings based upon evidence, he doesn't have to believe this expert and his opinion. And so we may have come to a different conclusion. We may have given the totality of the circumstances greater weight than his rather strange decision that this was the lowest he could go was low risk. But how does this relate to how the statute is interpreted? The statute has criteria in it. And based upon those criteria and the fact that it isn't beyond scientific fact, it's merely a preponderance of the evidence, how is it that this is absurd? Well, based on the factors that's set forth in subsection B of the statute, one of the factors is the risk assessment performed by a member of the SOMB. So that's one factor. If we don't believe the testimony and if we put ourselves in the position of the trial court to say we don't trust and we don't believe that opinion, then we can dispense with number one. Because if I understand your question correctly, if Judge Yarbrough had dispensed with that and said, well, you know, he says the lowest is low, but I'm going to interpret that as no risk, then we move down. The history of the adjudicated delinquent in subsection two, it's only the offense to which he pled guilty. And moving down to subsection three, evidence of the adjudicated delinquent's rehabilitation, the record is replete with instances and manners in which he was rehabilitated. So I could go on to list the other four subsections of the statute and how I believe the record was. Well, you said something about this is absurd, and your argument struck me as being another way of saying this is against the manifest weight of the evidence. Yes, based on the based on the factors. Yes, that's correct. So you're attacking the language of the statute and then alternatively attacking the trial court's judgment as being against the manifest way. It correct. And as well, the interpretation of the statute, I just I simply don't believe. And my argument is that they're the interpretation of no risk cannot mean no risk in the black and white letter. It's it's not as simple as a statutory construction that can be understood on its face. And the reason for that is because every person presents some risk of some sort. Now, if we go back to the standard of proof, we say by preponderance of the evidence, we call it what we will. But but. It's our argument that no person can be classified as no risk to the community whatsoever. I think we're receptive to your argument. You can tell by the questioning, because that would mean the statute on its face would be absurd. Yes. So we try to interpret statutes in a manner that avoids unjust and absurd results. But so then you're back down to the evidentiary question. And Sundberg clearly testified he was low risk. There was a history. Other witnesses testified he'd come a long way. He was turning his life around. As I read the record, the trial court then went off and talked about this incident with the theft of a mouse and a hard drive, so to speak. Evidence of anger issue. So if the court interpreted in the manner you're suggesting is no risk whatsoever, then why did it even bother to get into all of the other evidence? It could have said the statute says no risk. I find he did not prove no risk whatsoever. Case over. And I our argument is that the trial court made the determination that it did first in denying the petition and then second denying the motion to reconsider based on the fact that there was some negative behavior. And and to to say that the court was looking for a reason to deny the petition may be too strong. But it was certainly the only evidence that the court had that the minor did anything other than behave as a saying there's an avalanche of good evidence here. There's some negative evidence here. It shouldn't go against the respondent. Well, maybe it should be taken into consideration, but certainly not to the extent that it was to justify the denial of the petition in this case. Shouldn't we be giving the I mean, there is some evidence of negative behavior. I mean, you can weigh it, but we're not really supposed to be reweighing that. Are we up here based on a de novo review? I believe that this case should be considered a new and the evidence on a de novo review when you're talking about how we interpret the statute. But when you start drifting off into manifest weight and whether the trial court erred in its evaluation of the factors, I don't think that's a de novo review. And that's whether it's against the manifest way to the evidence, whether there's some evidence to support the trial judge's conclusion. And here there was not there. No, it's our position that no rational trier of fact could have reviewed the record the way this record was reviewed in order to deny the petition based on the limited information. And I might add wholly irrelevant conduct to sexual contact with minors. And if I may, in fact, to be that limited negative evidence that the court did here and as part of the record, in fact, tends to indicate that the minor did learn from the counseling that he had received from Mr. Sundberg and was honest. And that is a crucial component of sex offender counseling as any practitioner will advise. And that he was honest when he was confronted with the mouse and the hard drive. Thank you, Mr. Caver. You will have time for rebuttal, I know. Thank you. Mr. Bernhardt, you may proceed. Good morning, Your Honors. I guess my initial impression here in front of what you're speaking about, I think we're having trouble with different language from different professions. We have a social science language where the expert comes in and says, well, we don't go no risk, we go low risk. And that's all we do. Well, that's not the legal standard. The legal standard, which is in the statute, is we want no risk, but we want preponderance of evidence, which in legal language I think is low risk. Well, that's definitely not a certainty. It's not a certainty. And there's no certainty in legal language. Without a certainty. Right. Correct. And I think that's where a respondent argument fails, is that we're not talking about a social science standard like an expert in psychology, but we're talking about a legal standard. In your opinion, there's no problem with the statute? I think there's no problem with the statute. You would agree that no risk cannot be interpreted as no risk whatsoever? No, not when you look at the whole statute and preponderance of evidence. If you look at it in the plain language and as you spoke about the absurdity, it's clear that the legislature knows that there's no 100 percent no risk guarantee in anything in a statute. Or any decision made by a trial judge. That's why we have appellate courts. So could we read when it says currently poses, should it be currently poses, does not currently pose a risk as opposed to currently poses no risk? I think you could interpret it that way, yes. And I think that's what it says. You know, it's not, I still think the plain language is clear enough that we can take a liberal view of it and say this doesn't mean no risk. But then when you include the fact we don't want that absurdity, you know, the legislature didn't intend it, that it's clearly, the statute is not. So what about the evidence here? Wasn't there a great deal of evidence favorable to the respondent? I'm sorry. Wasn't there a great deal of evidence here favorable to the respondent? There was a great deal of evidence favorable to the respondent, but there were a few key things. You know, originally the judge, you know, he knew that these were sex offenses that were basically caused by anger issues at the minor's parents. Now there were still some of these anger issues currently happening. The minor had moved out of his parents' house and was living with someone else. Clearly there's a problem there. How old was he when he moved out? I'm not sure that's clear on the record. I think he was 16 or 17 at the time at the petition. But I really can't recollect. So I wouldn't want to be quoted on it. There's definitely some problems there. I think that's what the trial court was concerned with is these anger issues, the fact that he hasn't been in counsel for quite some time. And I think that was suggested by the expert witness that some of these family issues, the fact that he stole the equipment, that he seems to act out against, you know. Didn't the officer who was involved in investigating that testify? Yes, he did. Didn't he give credit to the minor for being honest and upfront? Yes, he did. But nevertheless, the minor did admit that he was mad at the teacher and that's why he stole the mouse and the hard drive. So again, I think the trial court thought about that and thought maybe there is some risk. Maybe this isn't quite the time yet. Maybe some more counseling is needed. And that's a decision, like Your Honor stated, that you have to review under the manifest weight of the evidence standard and not the de novo standard as the interpretation of the statute. The requirement relates to registration as a sex offender. It doesn't relate to registration as a computer or a mouse offender. And so there could be a disconnect between antisocial behavior that constitutes a crime and antisocial or confrontational behavior recalcitrance between a child and its parents that could result in something other than a crime. Well, I agree. But also here we also have this connection between angry at a teacher and acting out in a way against something else. Not confronting the teacher, not confronting the parents, but acting out or taking something in the case of the computer equivalent and acting out against the victim in the case of the parents or acting out or not agreeing with the parents and moving out of the house. That seems to be something I think the trial court really emphasized. What did the experts say relative to his further acting out in relation to the probability that he might in the future act out in a sexually deviant way? He said there was low risk, as low as he could say there was. Well, that seems to be what he's alluding to. What's the nexus of the connection between the anger and necessarily then giving a greater risk of a sexual offense in the future? Is this something the trial judges concluded or was there some expert testimony by Sundberg that took that into consideration? Well, I think it's something that the trial judge took into account. Like Yannick stated, the trial judge doesn't have to believe 100% what the experts said. It's he that has to make the judgment and it was he that decided that those anger issues still lingered and he was uncomfortable with, you know, making a decision where to take the minor off the registration. If there are no other questions, Your Honor. Okay, thank you. Mr. Kaver, rebuttal argument? Justice McClaren, I think, brings up a very good point that there's no nexus between being a sex offender and a hard drive and a mouse thief. This is a situation where there is no nexus between sex offense risk and stealing a computer hard drive and a mouse. To the extent that there is and to the extent that that's essentially the state's only argument in its response brief is that, look, we've got this and so therefore the trial court was correct in its determination. Well, to the extent that there is an equation between a sex offense and stealing a hard drive and a mouse from a school where one attends, then we're going back and we're looking back at the no risk. We're not, again, we're holding this minor to an impossible standard based on the evidence before the court. He was a teenager. Are you saying that the theft of the mouse and the computer is not contained within the criteria that the statute says for? No, I think the weight that it's being given under these circumstances with the mountain of evidence suggesting the minor's removal from the registry, I think is being given altogether far too much credit and far too much weight. This is and it is not to excuse, but to explain the conduct. The mind of a teenager is not fully developed and obviously teenagers are going to make bad decisions. It is not that we that any of us hold teenagers to a standard of never making bad decisions. It's how the child is trained and how the child responds to a bad situation. And in this case, the respondent minor responded truthfully. He responded honestly. And in fact, he offered a piece of evidence that had not been discovered as yet of being stolen. He was contrite and he was applying the skills that he learned, which goes to the heart of the question here, as to whether or not this minor is at risk to commit a future sex offense. The evaluator was aware of this hard drive and testified to it, correct? That's correct. Was aware that it was theoretically anger related? Yes. And was aware that the sex offenses were theoretically anger related? Yes. Was aware of the minor's problems, we call it that, with parents, which seem to be relatively normal problems, I guess, but anger, somewhat anger issues? Yes. And still said low risk? Yes. Thank you, Your Honors. I would like to thank the attorneys for their arguments today. The case will be taken under advisement from the WERA jury.